UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LULA BELL RICHARDSON                                                              PLAINTIFF

VERSUS                                                      CIVIL ACTION NO. 1:14CV361-RHW

CAROLYN W. COLVIN
Acting Commissioner of Social Security                                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

Lula Bell Richardson filed an application for disability insurance benefits, pursuant to the Social Security Act, alleging a disability onset date of March 12, 2011. Doc. [9] at 15, 115. Richardson was 58 years old at the alleged date of disability. *Id.* She has a high school education with three years of college and specialized training as a certified nurse's assistant, a licensed practical nurse, and a medical specialist. *Id.* at 138. She has past relevant work as a nurse's assistant, a sterile technician, and an operating room technician. *Id.* at 74-75. Richardson alleged disability based on a cataract in her right eye, diabetes, knee problems, right shoulder problems, heart problems, tachycardia, asbestosis, and sarcoidosis. *Id.* at 137. Her application was denied at the administrative level. Richardson requested and was granted a hearing before an Administrative Law Judge (ALJ). *Id.* at 55. In a written decision, the ALJ found Richardson to have severe impairments of diabetes mellitus, a partial tendon tear of the right shoulder, a meniscal tear of the right knee, and stenosis and disc herniation of the cervical spine. *Id.* at 17. The ALJ found that Richardson retained the residual functional capacity to perform a full range of light work. *Id.* at 18-21. Relying on testimony of a vocational expert, the ALJ found that Richardson could perform her past relevant work as sterile technician and a technician. *Id.* at 21. Because she could perform her past relevant work, the ALJ found that Richardson was not

disabled.  *Id.* at 22.

Richardson appealed the ALJ's decision and the Appeals Council denied her request for review on July 11, 2014.  *Id.* at 5-8.  Having exhausted her administrative remedies, Richardson then filed the instant complaint appealing the Commissioner's decision.  Doc. [1].  In her brief to the Court, Richardson argues that (1) the ALJ erred as a matter of law in his evaluation of multiple medical opinions of record; (2) the ALJ failed to include a "function-by-function" assessment when evaluating Richardson's RFC; and (3) the ALJ erred as a matter of law in failing to properly evaluate and classify Richardson's past work.  Doc. [12].

## Law and Analysis

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g).  This standard requires supporting evidence that is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision."  *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).  "'Conflicts in the evidence are for the

[Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id.*

**Evaluation of Medical Opinions**

Richardson contends that the ALJ erred in his evaluation of certain medical opinion evidence. Specifically, she identifies the medical opinions of Dr. John McCloskey, Dr. Jeffrey Noblin, Dr. Seema Badve, Dr. Thomas Tapley, and Dr. Glenn James. She asserts that these doctors opinions are not consistent with the ALJ's conclusion that Richardson could perform a full range of light work. Rather, she argues that these doctors opinions are more restrictive than the RFC assigned by the ALJ.

Richardson offers little explanation as to how these doctors opinions are inconsistent with the ALJ's RFC assessment. Dr. McCloskey, a neurosurgeon, treated Richardson for injuries sustained in a motor vehicle accident. Richardson points out that Dr. McCloskey assigned her a permanent, partial physical impairment rating of 5% for the whole body based on a prior neck injury. The fact that a treating physician assigns a permanent impairment rating is not necessarily inconsistent with a finding that the claimant is capable of performing light work. *See Carson v. Barnhart*, 242 F.Supp.2d 33, 39 (D.Me. 2002). The Social Security regulations define categories of work in terms of specific physical limitations rather than percentage impairments of body part or whole body. *Id.* Dr. McCloskey also opined in July 2012 that for purposes of social security, Richardson is permanently and totally disabled. Doc. [9] at 368. The ALJ considered Dr. McCloskey's opinion and concluded that his opinion should receive no significant weight because his treating notes and objective evidence did not support it. *Id.* at 20. The ALJ pointed to Dr. McCloskey's remarks of July 31, 2012, that Richardson's injuries from the motor accident were not sufficient to assign a percentage of disability. *Id.* at 20, 374. The ALJ also noted that Richardson refused Dr. McCloskey's recommendation of a steroid shot and/or surgery. *Id.* at 20,

4

367-68.  Finally, the ALJ correctly noted that the question of disability is reserved for the Commissioner.  *Id.* at 20; *see Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).   Based on the foregoing, the undersigned concludes that the ALJ adequately considered Dr. McCloskey's opinion and that substantial evidence supported the ALJ decision to give Dr. McCloskey's opinion no significant weight.

With respect to Dr. Noblin, the ALJ considered Dr. Noblin's treatment notes.  Doc. [9] at 19, 364-65.  On May 22, 2012, Dr. Noblin evaluated Richardson for her right knee and right shoulder pain.  *Id.* at 364.  Although the ALJ did not indicate what, if any weight, he assigned to Dr. Noblin's opinion, Richardson has failed to identify any medical opinion from Dr. Noblin regarding Richardson's limitations as they relate to her RFC.  The ALJ did derive from Dr. Noblin's treatment notes that Richardson's knee appeared to be somewhat asymptomatic, but that she complained of right shoulder pain.  *Id.* at 19.  In his treatment notes, Dr. Noblin mentioned that Richardson has some stiffness and pain in her shoulder; however, Dr. Noblin did not appear to assign any limitations based on her shoulder condition.  *Id.* at 364-65.  He assigned her a 5% permanent impairment of the upper extremity and 3% whole person based on the shoulder condition.  *Id.* at 365.  As stated earlier, the fact that a treating physician assigns a permanent impairment rating is not necessarily inconsistent with a finding that the claimant is capable of performing light work for purposes of Social Security evaluation.  *See Carson*, 242 F.Supp.2d at 39.  Richardson has failed to identify any opinion of Dr. Noblin's that would be inconsistent with the ALJ's finding that she is capable of a full range of light work.

Dr. Badve conducted a consultative examination of Richardson.  Doc [9] at 292-94.  The ALJ considered Dr. Badve's report; however, he did not explain what weight, if any, he accorded

to that opinion. Doc. [9] at 15. The ALJ noted that Richardson reported to Dr. Badve that she lost her last job because of a sterilization problem and that she tried to find another job. *Id.* Dr. Badve found, among other things, that Richardson's right knee had some crepitus but normal range of motion; that she demonstrated full strength in all of her extremities; that X-rays of her knees were normal except for hypertrophic changes. *Id.* While he gave an extensive history and description of Richardson's symptoms, Dr. Badve did not offer an opinion regarding her limitations other than to say that she could work more than two hours in an eight-hour day. *Id.* at 365. He noted that Richardson has a history of chronic pain in her shoulder, chronic pain in her right knee that looks like osteoarthritis; however, the range of motion was within normal limits. *Id.* at 364-65. Richardson's contention that Dr. Badve limited her to sedentary work has no foundation in Dr. Badve's report. He set a minimum threshold of more than two hours of work in an eight-hour day, but did not offer any opinion about Richardson's exertional level or the maximum hours she could work in an eight-hour day. Dr. Badve did not offer any opinion regarding exertional limitations that would be inconsistent with a finding of light work; therefore, the ALJ did not err in failing to assign any particular weight to this physician.

With respect to Dr. Tapley and Dr. James, the ALJ gave their opinions "great weight". Doc. [9] at 20. These two doctors opined that Richardson could perform light work activity. *Id.* at 297-304, 363. The ALJ found this to be consistent with the evidence, including Richardson's statements that her right knee was asymptomatic and that her right shoulder pain was moderate. *Id.* at 20-21. On appeal Richardson argues that the opinions of Dr. Tapley and Dr. James were not consistent with a full range of light work. Richardson's argument is without merit. She does not explain the alleged inconsistency. To the contrary, Dr. Tapley concluded, among other

things, that Richardson could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds; that she could stand and/or walk about 6 hours in an eight-hour work day; and that she had no limits on pushing and or pulling. *Id.* at 297-304. In his report, Dr. James simply reported "no change in status". *Id.* at 363. Based on the foregoing, the undersigned finds that the ALJ did not err in his evaluation of the medical opinions.

**"Function-by-Function" Assessment**

Richardson argues that the ALJ erred because his RFC finding did not include a function-by-function analysis and failed to properly evaluate her non-exertional limitations. Richardson asserts that the medical evidence supports the inclusion of manipulative limitations. She further asserts that the ALJ's RFC discussion did not evaluate the limitations resulting from non-exertional limitations of pain and fatigue.

The ALJ adequately explained the basis of his RFC assessment, because he relied on the function-by-function RFC assessment completed by the state agency physician (Dr. Tapley). Doc. [9] at 20, 297-304. The state agency physician's function-by-function RFC constitutes substantial evidence supporting the ALJ's findings. *See Beck v. Barnhart*, 205 Fed. App'x 207, 213-14 (5th Cir. 2006); *Kinser v. Colvin*, 2014 WL 6973022, at *3 (N.D.Tex. Dec. 9, 2014); *Brown v. Astrue*, 2009 WL 64117, at *4 (N.D. Tex. Jan. 12, 2009); *Zeno v. Barnhart*, 2005 WL 58822, at *9 (E.D. Tex. Feb. 4, 2005). Hence, the Court finds Richardson's argument to be without merit.

Richardson points to other impairments that she argues should have resulted in manipulative limitations. Although Richardson identifies impairments which hypothetically might lead to limitations, she does not point to any medical evidence that would support a

finding of manipulative limitations. To the contrary, Dr. McCloskey, Dr. Noblin, and Dr. Badve did not assign any manipulative restrictions. Dr. Tapley specifically determined that she did not demonstrate any manipulative restrictions. Doc [9] at 300. Accordingly, substantial evidence supports the ALJ's omission of manipulative restrictions from the RFC.

With respect to Richardson's allegations of pain and fatigue, the ALJ took into consideration her testimony and medical reports relating pain and fatigue. The ALJ noted among other things that no treating doctor restricted her ability to stand; that she had not had treatment for pain in over year; that her knee injury appeared to be asymptomatic; that Dr. Badve found normal range of motion in her right knee; and that Richardson related in the medical records that her right shoulder pain was moderate. Doc. [9] at 18-21. Richardson does not point to any medical evidence supporting non-exertional limitations for fatigue, and although the record is replete with references to pain, the Fifth Circuit has instructed that not all pain is disabling. *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992). "Pain constitutes a disabling condition when it is constant, unremitting, and wholly unresponsive to therapeutic treatment." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). The ALJ found Richardson's subjective complaints to be less than credible. Doc. [9] at 21. He noted that her termination from her last job did not result from her impairments, and that she reported searching for other work. *Id.* He concluded that these actions were not consistent with disability. *Id.* The undersigned finds that the ALJ sufficiently addressed Richardson's complaints of pain and fatigue and that substantial evidence supported the omission of limitations based on pain and fatigue.

**Past Relevant Work**

Richardson argues that the ALJ erred in failing to properly evaluate and classify her past

work as sterile technician and technician.  Citing to Social Security Ruling 86-62, she asserts that the ALJ did not have adequate documentation of past work.  This documentation should include factual information about work demand that would have a bearing on medically established limitations. According to Richardson, the ALJ's findings contradicts the vocational expert's testimony who indicated that those occupations were plausibly performed at the medium exertional level given the demands in today's workplace.

The ALJ had before him the testimony of a vocational expert regarding the nature of Richardson's past work and its physical demands.  Doc. [9] at 74-76.  Moreover, the record contains a work history report filled out by Richardson explaining the physical demands of her job as a sterile technician.  *Id.* at 157-64.  Based on the foregoing, the Court concludes that the ALJ had adequate information and documentation from which to determine how Richardson's work would bear on her medically established limitations.

The Court finds that Richardson's argument that her past work was of a medium level is without merit.  Richardson takes the vocational expert's testimony out of context.  The vocational expert did not conclude that Richardson's past work required a medium exertion level.  Rather, the vocational expert testified that the past work as a sterile technician and operating room technician are listed as light work, and that anything in this general field would be light work.  Doc. [9] at 75.  This comports with the ALJ's RFC finding that Richardson is capable of performing a full range of light work and therefore she is capable of performing her past relevant work.  Richardson's counsel then asked the vocational expert with respect to the sterile technician position, "[w]ould it be possible that she might be required to do medium level work as part of that job?"  *Id.* at 75-76.  The vocational expert responded "[w]ell it's listed as light, but anything's

possible." *Id.* at 76.  The vocational expert's statement on examination that "anything's possible" does not contradict the conclusion that these positions are classified as light work.  The ALJ concluded that Richardson is capable of performing a full range of light work, including past relevant work as sterile technician and technician;  therefore, she is not disabled.  The Court finds that the vocational expert's testimony constitutes substantial evidence in support of the ALJ's conclusion.

The Court finds no merit with Richardson's suggestion that the ALJ failed to account for, or misstated, Richardson's testimony regarding the reason for her termination from prior employment as a sterile technician.  In fact Richardson testified that she was terminated from a previous job because her "work performance wasn't up to standards."  Doc. [9] at 62.  This is further corroborated by Dr. Badve, who reported that Richardson stated she was fired from her job as a sterile technician because of contamination in a heart tray.  *Id.* at 292.  The ALJ accurately noted this in his decision.  *Id.* at 19.

Based on the foregoing, the undersigned finds that the decision of the Commissioner should be AFFIRMED and that Richardson's complaint is hereby dismissed with prejudice.

SO ORDERED, this the 17th day of March, 2016.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE